UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHN REDD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:15-cv-01004-NCC |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of John Redd (Plaintiff) for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401 *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 14) and Defendant has filed a brief in support of the Answer (Doc. 19). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 10).

### I. PROCEDURAL HISTORY

Plaintiff filed his application for DIB on February 21, 2012 (*See* Tr. 83). Plaintiff was initially denied on April 13, 2014, and he filed a Request for Hearing before an Administrative Law Judge (ALJ) on May 4, 2012 (Tr. 86-90, 91). After a hearing, by decision dated November 15, 2013, the ALJ found Plaintiff not disabled (Tr. 9-27). On May 18, 2015, the Appeals Council denied Plaintiff's request for review (Tr. 1-3). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2016, and had not engaged in substantial gainful activity since September 30, 2011, the alleged onset date of disability (Tr. 14). The ALJ found Plaintiff has the severe impairments of diabetes mellitus, neuropathy, degenerative disc disease of the lumber spine, arthritis of the knees, obstructive sleep apnea, major depressive disorder, and post-traumatic stress disorder but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 14-16).

After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform less than the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a) with the following limitations (Tr. 16). He is able to lift and/or carry ten pounds occasionally and five pounds frequently (*Id.*). He is able to stand and walk for two hours out of an eight-hour workday (*Id.*). He is able to sit for six hours out of an eight-hour workday (*Id.*). He is unable to operate foot petals (*Id.*). He is limited to occasional climbing of ramps and stairs, but no climbing of ladders, ropes, or scaffolds (*Id.*). He is able to balance and stoop occasionally, but is unable to kneel, crouch, or crawl (*Id.*). He is able to frequently reach, handle, and finger (*Id.*). He must avoid hazards, such as dangerous machinery or unprotected heights (*Id.*). He is able to perform simple and routine tasks in a non-public work setting (*Id.*). He must not be required to communicate with the general public on behalf of his employer (*Id.*). The ALJ found Plaintiff unable to perform any past relevant work, but that there are jobs that exist in significant numbers in the national economy that he can perform including cutter/paster of press clippings, document preparer of microfilm, and patcher (Tr. 21-22). Thus, the ALJ

concluded that a finding of "not disabled" was appropriate (Tr. 22). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to

3

establish his or her Residual Functional Capacity (RFC). *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Id.* See also *Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing

*McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff raises two issues. First, Plaintiff alleges that the findings of residual functional capacity are not supported by "some" medical evidence, as required under the standards in *Singh v. Apfel*, 222 F.3d 448 (8th Cir. 2000) and *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) (Doc. 14 at 7). Second, Plaintiff argues that the hypothetical question to the vocational expert does not capture the concrete consequences of Plaintiff's condition and, therefore, the response of the vocational expert does not represent

5

substantial evidence (Doc. 14 at 23). For the following reasons, the court finds that Plaintiff's arguments are without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

**A. Plaintiff's Credibility**

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including Plaintiff's RFC. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010). In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ reviewed the objective medical evidence of record and concluded that "the functional examination findings since the alleged date of onset are not supportive of the degree of limitation alleged and suggest that the [Plaintiff] can work within the parameters set forth in the residual functional capacity" (Tr. 17). "In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence," although a disability determination "cannot be made solely on the basis of objective medical evidence." Social Security Ruling (SSR) 96-7p, 1996 WL 374186, at *1 (July 2, 1996). Indeed, a claimant's "symptoms, including pain, will be determined to diminish [his] capacity for basic work activities to the extent that [his] alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record." *Id.* at *2.

In his analysis of Plaintiff's credibility, the ALJ specifically referred to several objective measures during the relevant period to explain why Plaintiff's physical condition was not disabling. His detailed review, encompassing nearly two full pages, included multiple instances where Plaintiff had a clear chest and reported no signs of difficulty breathing or of respiratory distress (Tr. 17-18, 358, 594); had a normal gait and was able to walk on his toes and heals without difficulty (Tr. 17-18, 358, 594); had negative straight leg raise exams to at least 80 degrees (Tr. 18, 358, 594, 603); was able to bend forward to the ankle without difficulty (Tr. 18, 594); and did not have signs of edema, reflex loss, or loss of strength in his lower extremities (Tr. 18, 358, 594, 603).

Second, the ALJ also found Plaintiff's alleged limitations resulting from his diagnosed mental impairments unsupported by the evidence of record (Tr. 18-19). The ALJ noted that Plaintiff has been diagnosed with both depressive and anxiety disorders and has complained of

7

symptoms of anxiety, nightly nightmares, excessive fear, as well as sweating, nausea, and chest pain. However, the ALJ found these alleged symptoms inconsistent with the mental status findings in the records. Specifically, the ALJ noted, "mental status findings have routinely shown the [Plaintiff] to be alert, oriented, and cooperative with his mental health providers" (Tr. 18). *See, e.g.,* Tr. 566 ("Veteran presented as alert, oriented x3, and openly responsive to all inquiries."). The ALJ further indicated that Plaintiff has not shown any signs of substantial memory loss, decreased concentration, decreased fund of information; is not delusional; frequently denied suicidal ideation; has logical and goal directed thought patterns; and has not generally shown signs of psychomotor retardation or pressured speech (Tr. 18-19, 529, 697, 709). The ALJ also considered that Plaintiff did not start mental health treatment until after July 2012 but, once he started, Plaintiff's mental health impairments have been largely managed through routine medication management and monthly visits with his therapist and psychiatrist (Tr. 19). *See also* Tr. 529-539, 564-569, 694-698, 703-709 (various mental health records indicating routine treatment). "'If an impairment can be controlled by treatment or medication, it cannot be considered disabling.'" *See Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010)). Furthermore, the ALJ noted Plaintiff has not required hospitalization or frequent emergency room visits (Tr. 19). *See Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) (upholding an ALJ's determination a claimant lacked credibility due in part to "absence of hospitalizations … limited treatment of symptoms, [and] failure to diligently seek medical care").

Third, the ALJ considered Plaintiff's activities of daily living and found his level of activity inconsistent with his alleged limitations. Specifically, the ALJ noted that on a typical day Plaintiff:

8

> gets up, takes his dogs out, eats several times, watches television, takes a nap, works in his shop, and chats on the computer. He gets dressed, bathes, cares for his hair, and eats. He prepares meals for himself, such as barbeque, frozen meals, or sandwiches. He does household chores, including loading the dishwasher, vacuuming, and caring for his dogs. He goes shopping for food, clothing, and everyday items. He is able to hunt. He is able to use the leaf blower and table saw. He admitted to his treating doctors that he was functionally "independent" as [of] February 2012. In March 2012, he admitted that he was able to take care of his activities of daily living without any help. As of November 2012, treatment notes indicate that he was independent in ambulation, dressing, bathing, communication, reading, writing, eating, cooking, and using the toilet.

(Tr. 19) (citing Tr. 205-212, 311, 316, 407, 628, 680). *See also* Tr. 529 ("Tries to keep busy with wood working …."). The ALJ concluded, "The fact that [Plaintiff] is capable of sitting, standing, and walking sufficiently to perform these daily activities, suggests that he is able to sit, stand, and/or walk sufficiently to perform a reduced range of work as stated in the residual functional capacity. It is also evidence that claimant's allegations are not entirely credible" (Tr. 19). *Steed*, 524 F.3d at 876 (finding the ALJ did not err in discounting plaintiff's credibility, where she reported that she could only stand for 15 minutes, sit for one to two hours, and lift half gallon of milk, but she also reported she could perform housework, take care of child, cook, and drive).

The ALJ further indicated that although Plaintiff's Global Assessment of Functioning (GAF)[1] scores have dipped as low as 47 and are occasionally in the 40s indicating serious

---

[1] Global assessment of functioning ("GAF") is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. *See Diagnostic and Statistical Manual of Mental Disorders*, DSM–IV, 32-34 (4th ed. rev. 2000). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. *Id.* at 34. The "Physical Capacities Evaluation" was completed, in most part, on July 25, 2012, except for the second page (Tr. 525) which was completed on August 6, 2012. The Court finds this slight inconsistency irrelevant to its analysis of the form. [2] The "Physical Capacities Evaluation" was completed, in most part, on July 25, 2012, except for the second page (Tr. 525) which was

symptoms or serious limitations in social, occupational, or school functioning, Plaintiff's GAF scores are traditionally in the 50s, indicating only moderate limitations. The ALJ also found that Plaintiff's GAF scores are not entirely credible because they are based on subjective complaints and, as previously discussed, inconsistent with his activities of daily living (Tr. 18). Accordingly, the ALJ properly afforded Plaintiff's GAF scores little weight. *See Jones v. Astrue*, 619 F.3d 963, 974 (8th Cir.2010) (ALJ may afford greater weight to medical evidence and testimony than to GAF scores).

Finally, the ALJ noted the following "other factors that affect the credibility of the allegations": (1) Plaintiff did not stop working due to his impairments; (2) Plaintiff admitted that he collected unemployment benefits for a year after his employment ended; and (3) Plaintiff acknowledged at his administrative hearing that he had looked for work during the relevant time period (Tr. 20). The ALJ was well within his authority to consider these additional factors when determining the Plaintiff's credibility. *See Goff*, 421 F.3d at 793 ("[I]t [is] relevant to credibility when a claimant leaves work for reasons other than her medical condition."); *Jernigan v. Sullivan*, 948 F.2d 1070, 1074 (8th Cir.1991) (finding claimant's application for unemployment benefits adversely affected his credibility; "[a] claimant may admit an ability to work by applying for unemployment compensation benefits because such an applicant must hold himself out as available, willing and able to work."); *Melton v. Apfel*, 181 F.3d 939, 942 (8th Cir. 1999) (claimant's job search during the relevant period "undermines his claim that he was unable to work").

In conclusion, the court finds that the ALJ's credibility determination is based on substantial evidence and consistent with the Regulations and case law.

---

completed on August 6, 2012. The court finds this slight inconsistency irrelevant to its analysis of the form.

## B. Plaintiff's RFC

The Regulations define RFC as "what [the claimant] can do" despite his "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." *Lauer*, 245 F.3d at 703. "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker*, 363 F.3d at 783 (quoting *McKinney*, 228 F.3d at 863). *See also Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013).

To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments. *Anderson v. Shalala*, 51 F.3d. 777, 779 (8th Cir. 1995). Although assessing a claimant's RFC is primarily the responsibility of the ALJ, a "'claimant's residual functional capacity is a medical question.'" *Lauer*, 245 F.3d at 704 (quoting *Singh*, 222 F.3d at 451). The Eighth Circuit clarified, in *Lauer*, 245 F.3d at 704, that "'[s]ome medical evidence,' *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)." Thus, an ALJ is "required to consider at least some supporting evidence from a professional." *Id. See also Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); *Eichelberger*, 390 F.3d at 591.

As previously discussed, the ALJ found that Plaintiff had the RFC to perform "less than sedentary work" with additional limitations. 20 C.F.R. § 404.1567(a) defines sedentary work as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." Indeed, SSR 85-15, 1985 WL 56857, at *5, states that "[w]here a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work. … If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact." The sitting requirement for the full range of sedentary work "allows for normal breaks, including lunch, at two hour intervals." *Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir. 2005) (citing SSR 96-9p, 1996 WL 374185, at *6 (July 2, 1996)). Additionally the range of sedentary jobs requires a claimant "to be able to walk or stand for approximately two hours out of an eight-hour day." *Id.* at 997 (citing 1996 WL 374185 at *7).

Although Plaintiff asserts that the ALJ failed to support his residual functional capacity determination with "some" medical evidence as required under the standards in *Singh*, 222 F.3d 448, and *Lauer*, 245 F.3d 700, the court finds the ALJ's RFC determination was based on substantial evidence. Specifically, as addressed in significant detail above, the ALJ properly addressed Plaintiff's credibility and in doing so, conducted a complete and detailed analysis of Plaintiff's medical record, activities of daily living, and GAF scores. The ALJ additionally addressed the medical opinion evidence of record, affording the opinions of Plaintiff's treating

physician, Dr. Sherry Ritter, and of the state agency physician, Dr. Bernard Stevens, little and limited weight, respectively, because neither physician had access to or reviewed Plaintiff's complete medical record and Dr. Ritter's opinion, limited to a single acute incident, failed to limit Plaintiff longitudinally as significantly as the ALJ (Tr. 20, 272, 519).

The ALJ also considered the opinion of Carlene McMillian ("McMillian"), a nurse practitioner, affording her opinion little weight (Tr. 20). Plaintiff saw Ms. McMillian three times at the end of 2011 into the beginning of 2012 (Tr. 251-253) and once on July 25, 2012 "for paperwork" (Tr. 528). Ms. McMillian completed a "Physical Capacities Evaluation,"[2] a checkbox form, in which Ms. McMillian indicates Plaintiff has the following limitations: he can sit for 2 hours in an 8 hour day; stand and/or walk for 2 hours in an 8 hour day; can never lift and/or carry more than 5 pounds; cannot climb, stoop, kneel, crouch, or crawl; may not grasp, push and pull or engage in fine manipulation with his right hand (Tr.524-526). Although Plaintiff asserts that the ALJ improperly discredited Ms. McMillian's opinion because Plaintiff may have established care with Ms. McMillian for the purpose of completing disability paperwork, the ALJ may properly consider the nature of Plaintiff's relationship with a medical provider in considering what weight to give an opinion (Tr. 20). 20 C.F. R. § 404.1527(c)(2). The ALJ also considered that Plaintiff met with Ms. McMillian only "on a limited number of occasions" and that Ms. McMillian's treatment notes, largely illegible, do not contain extensive physical findings (Tr. 20). 20 C.F. R. § 404.1527(c)(3). Furthermore, Ms. McMillian is not an acceptable medical source. 20 C.F.R. § 404.1513. *See also* Social Security Ruling 06–03p, 2006 WL 2329939, at *2 ("[O]nly 'acceptable medical sources' can give us medical opinions."). Finally, Ms. McMillian's opinion is primarily in the checklist format and a provider's

---

[2] The "Physical Capacities Evaluation" was completed, in most part, on July 25, 2012, except for the second page (Tr. 525) which was completed on August 6, 2012. The court finds this slight inconsistency irrelevant to its analysis of the form.

checkmarks on a form are conclusory opinions which can be discounted if contradicted by other objective medical evidence—as is the case here. *Stormo*, 377 F.3d at 805-06; *Hogan*, 239 F.3d at 961. *See also Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011) (holding that checkmarks on a Medical Source Statement are conclusory opinions which can be discounted if contradicted by other objective medical evidence); *Wildman*, 596 F.3d at 964 (" 'The checklist format, generality, and incompleteness of the assessments limit [the assessments'] evidentiary value.' ... Indeed, '[a] treating physician's opinion deserves no greater respect than any other physician's opinion when [it] consists of nothing more than vague, conclusory statements.") (quoting *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001) and *Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996)).

The Plaintiff also asserts that the ALJ erred by not considering his VA disability rating (Doc. 14 at 12). Plaintiff argues that the Eighth Circuit's decision in *Morrison v. Apfel* controls. 146 F.3d 625 (8th Cir. 1998). The VA determined that Plaintiff was eligible for disability benefits, finding Plaintiff had a lumbar sacral or cervical strain at 40%; paralysis of the sciatic nerve at 10%; limitation of motion of the thumb at 10%; paralysis of the sciatic nerve at 10%; and limitation of the indexer long finger at 10%, for a combined rating of 60% (*See* Tr. 262).

Both *Morrison* and SSR 06–3p require the ALJ to consider the VA's finding of disability. *Morrison*, 146 F.3d at 628; SSR 06–3p. However, "the ALJ is not bound by the disability rating of another agency when he is evaluating whether the claimant is disabled for purposes of social security benefits[.]" *Pelkey v. Barnhart*, 433 F.3d 575, 579 (8th Cir. 2006) (citing 20 C.F.R. § 404 .1504; *Fisher v. Shalala*, 41 F.3d 1261, 1262 (8th Cir. 1994) (per curiam) ("There is no support for [the claimant's] contention that his sixty-percent service-connected disability rating equates with an inability to engage in any substantial gainful activity under social security

standards.")). In addition, "[a]lthough *Morrison* states that an ALJ should state her reasons for rejecting the VA's disability findings, the Eighth Circuit has since held that an ALJ gives proper consideration to a VA disability determination if she considers and discusses 'the underlying medical evidence contained in the VA's Rating Decision.' " *Rael v. Soc. Sec. Admin.*, No. 8:07CV432, 2008 WL 4279707, *14 (D. Neb. Sept.16, 2008) (quoting *Pelkey*, 433 F.3d 575). Here, the ALJ considered and discussed the medical evidence underlying the VA's disability determination (*See, e.g.,* Tr. 17-18, 358, 594, 603 (regarding Plaintiff's physical limitations)). Thus, the ALJ gave proper consideration to the VA disability determination.

Finally, to the extent Plaintiff identifies records that support Plaintiff's allegations, "[i]f substantial evidence supports the decision, then we may not reverse, even if inconsistent conclusions may be drawn from the evidence and even if we may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

In conclusion, the court finds that the ALJ's RFC determination is consistent with the relevant evidence of record including the objective medical evidence, the observations of medical providers, and diagnostic test results, as well as Plaintiff's credible limitations; that the ALJ's RFC determination is based on substantial evidence; and that Plaintiff's arguments to the contrary are without merit.

## C. VE Hypothetical

Finally, Plaintiff asserts that the hypothetical question to the vocational expert does not capture the concrete consequences of the Plaintiff's condition and, therefore, the response of the vocational expert does not represent substantial evidence. Specifically, Plaintiff argues that because the restrictions contained in the RFC are not supported by the evidence of record, the hypothetical question posed is consequently flawed and the vocational expert's response does not

15

represent substantial evidence. However, as previously addressed, the court finds the ALJ's RFC determination to be consistent with the relevant evidence of record. Accordingly, as the ALJ appropriately included the restrictions as indicated in his RFC determination in the hypothetical question to the vocational expert, the court finds that the hypothetical which the ALJ submitted to the vocational expert was proper, the ALJ properly relied on the vocational expert's testimony that there were jobs existing in significant numbers which Plaintiff could perform, and Plaintiff's arguments to the contrary are without merit (*See* Tr. 67-71). *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) ("A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ."). Because there were other jobs which Plaintiff could perform, the court additionally finds that the ALJ's determination that Plaintiff was not disabled is based on substantial evidence and is consistent with the Regulations and case law.

## IV. CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 27th day of September, 2016.

/s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE